**GLENN JOHNSTON, INC., Petitioner,**

v.

**COMMONWEALTH of Pennsylvania, Respondent.**

Commonwealth Court of Pennsylvania.

Argued April 13, 1998.

Decided May 28, 1998.

---

Lloyd R. Persun, Harrisburg, for petitioner.

Thomas W. Bergen and Bart J. DeLuca, Jr., Harrisburg, for respondent.

Before DOYLE and KELLEY, JJ., and McCLOSKEY, Senior Judge

DOYLE, Judge.

Glen Johnston, Inc. (Johnston) appeals from an order of the Board of Finance and Revenue (Board) which affirmed the decision of the Board of Appeals, denying Johnston a refund of the sales tax paid on the purchase of tangible property for use in the construction of manholes, water mains, and sanitary sewers.

The relevant facts of the case have been stipulated by the parties pursuant to Pa. R.A.P. 1571(f). Johnston is a Pennsylvania corporation engaged in business as a public utility contractor and its only customers are public utilities. The equipment at issue included backhoes used for excavation and placing manholes into the bedding material, air compressors to power drills, loaders to place stone into trenches, and bulldozers and graders to compact and grade the backfill after the water mains were in place, and an asphalt spreader used to pave the surface above the trenches, as well as parts for all of the enumerated equipment. Once Johnston completed construction of the water mains, sewers, and manholes, the structures were turned over to the municipal entities or public utilities for whom it worked to provide public utility service.

On September 1, 1995, Johnston filed a petition for refund with the Board of Appeals of the Department of Revenue. The petition sought the refund of $53,916.08 plus statutory interest, which was the amount of sales tax paid to the Commonwealth for the purchase and use of the machinery, as well as parts and supplies for the machinery. The Board of Appeals bifurcated Johnston's petition into a claim for $7,548.25, the amount of local sales tax collected by the Commonwealth, and $46,367.82, the amount of sales tax collected for the Commonwealth.[1] On March 1, 1996, the Board of Appeals denied both petitions and Johnston filed timely petitions for review of the Board of Appeals' orders with the Board on April 1, 1996.

On September 25, 1996, the Board, citing *Ernest Renda Contracting Co. v. Commonwealth*, 516 Pa. 325, 532 A.2d 416 (1987), and *General Asphalt Paving Co. v. Commonwealth*, 94 Pa.Cmwlth. 61, 502 A.2d 779 (1986), issued two identical orders affirming the decisions of the Board of Appeals as to both petitions for refunds. Specifically, the

---

1. We note that a one-cent difference exists between the sum of the bifurcated refund petitions ($7,548.25 + $46,367.82), which equals $53,- 916.07 and the entire refund, which is $53,- 916.08.

Board concluded that Johnston had not demonstrated that the machinery and equipment used to construct the public utility facilities was exempt from taxation because the machinery, tools, and parts were not affixed to the real estate. This appeal followed.[2]

Pursuant to Section 202(b) of the Tax Reform Act of 1971,[3]

> b) There is ... imposed upon the use, ... within this Commonwealth of tangible personal property purchased at retail on or after the effective date of this article, and on those services described herein purchased at retail on and after the effective date of this article, a tax of six per cent of the purchase price....

72 P.S. § 7202(b). However, by limiting the definition of the term "use," the General Assembly created several exemptions from the tax imposed in Section 202(b). Specifically, Section 201(o)(4)(B), 72 P.S. § 7201(o)(4)(b) provides:

> (4).... [T]he term "use" shall not include—
>
> . . . .
>
> (B) The use or consumption of tangible personal property, including but not limited to machinery and equipment and parts therefor, and supplies or the obtaining of the services described in subclauses (2), (3) and (4) of this clause directly in the operations of—
>
> . . . .
>
> (iii) The producing, delivering or rendering of a public utility service, or in constructing, reconstructing, remodeling, repairing or maintaining the facilities which are directly used in producing, delivering or rendering such service;

72 P.S. § 7201(o)(4). However, that same section carves out an "exception" to the exemption by further providing that

> The exclusions provided in subparagraphs (i), (ii), (iii) and (iv) shall not apply to any

vehicle required to be registered under The Vehicle Code except those vehicles directly used by a public utility engaged in the business as a common carrier; to maintenance facilities; or to materials, supplies or equipment to be used or consumed in the construction, reconstruction, remodeling, repair or maintenance of real estate other than directly used machinery, equipment, parts or foundations therefor that may be affixed to such real estate....

*Id.*

The application of the exemption and the exception to it is well settled. In *Commonwealth v. Ragnar Benson, Inc.,* 482 Pa. 224, 393 A.2d 634 (1978), our Supreme Court addressed the application of Section 202(o). In *Ragnar Benson,* the taxpayer was an engineering and construction firm which designed and built two cooling towers for the Philadelphia Electric Company. Following an audit of its business activities, the Commonwealth assessed Ragnar Benson $3,206.03, representing use tax on the materials used to construct the towers. Ragnar filed a petition for reassessment with the Commonwealth Sales Tax Board, contesting $582.80 of the $3,206.03 of the assessment. Ragnar Benson's petition was denied and it appealed to this Court, which reduced the $582.80 by $161.78, but denied it further relief.[4] Ragnar then appealed to our Supreme Court, seeking an exemption from the use tax for the materials that it used to construct the towers. On appeal, the Supreme Court denied Ragnar Benson relief, concluding that

> We find that the exemption does not apply to the items involved ... and that appellant is not entitled to any applicable exemption. The involved items consist of materials used in the construction of the cooling towers and were, therefore, used in the construction of real estate. They are

---

**2.** When reviewing a decision of the Board of Finance and Revenue, this Court has the broadest discretion because, although brought within our appellate jurisdiction, this Court essentially performs the function of a trial court. *Consolidated Rail Corporation v. Commonwealth,* 679 A.2d 303 (Pa.Cmwlth.1996), *aff'd,* 547 Pa. 453, 691 A.2d 456 (1997).

**3.** Act of March 4, 1971, P.L. 6, *as amended,* 72 P.S. § 7202(b).

**4.** 27 Pa.Cmwlth. 226, 366 A.2d 596 (1976), *aff'd,* 482 Pa. 224, 393 A.2d 634 (1978).

subject to tax because they were not affixed to the real estate as required.

*Ragnar Benson,* 482 Pa. at 227, 393 A.2d at 636. An identical result was reached in *Ernest Renda Contracting Co.,* in which the Court addressed the application of Section 201(*o*)(4). In that case, the taxpayer argued that tools, equipment, and supplies used, but not installed, in construction of public utility facilities are non-taxable under the public utility exclusion. Based on *Ragnar Benson,* the Court explicitly rejected this argument.

■ In the present case, we are presented with an issue identical to that presented to our Supreme Court in *Ernest Renda* and *Ragnar Benson,* and we must, therefore, reach the same result. Because the machinery tools and supplies at issue in the present case were used by a contractor and not a public utility itself and were not affixed to the real estate, we must affirm the decision of the Board of Finance and Revenue.[5]

Next, we address Johnston's constitutional challenge that because the petitions of seven other taxpayers before the Board were *granted* within the identical context of the present case, the Board's inconsistent decisions violate the Uniformity Clause of the Pennsylvania Constitution,[6] as well as the

Equal Protection Clause of United States Constitution.[7]

In *Commonwealth v. Beck Electric Construction, Inc.,* 32 Pa.Cmwlth. 229, 379 A.2d 626 (1977), *aff'd in part & rev'd in part on other grounds,* 485 Pa. 604, 403 A.2d 553 (1979), this Court examined an identical issue. Citing our Supreme Court's decision in *Commonwealth v. Western Maryland Railway Co.,* 377 Pa. 312, 105 A.2d 336 (1954), we concluded that a conflicting decision by the Board on an identical issue does not estop the Board from adjudicating the issue correctly, nor does it violate the Uniformity Clause of the Pennsylvania Constitution or the Equal Protection Clause of the United States Constitution.

■ Moreover, in its brief, the Board notes that, in the seven cases where refunds were awarded, it failed to discover or analyze *Ernest Renda* and *Ragnar Benson* and that, after July 1996, the Board has consistently denied relief to the taxpayers on this issue. Accordingly, although the Board erroneously granted refunds in seven other cases, it is not bound or estopped to decide the issue incorrectly in the present case because these decisions involve the administration of the Board's duties to the public at large, *i.e.,* the collection of taxes properly due.[8] Therefore,

---

5. In *Ragnar Benson,* Justice Manderino wrote a dissenting opinion, arguing that

> [t]he majority errs when it says that this appellant must be taxed for these items because they were not affixed. The last paragraph of Section 201(o)(4)(B) does list exceptions to the granting of the exemption, however these exceptions must be read in conjunction with the previous language granting the exemption. The interpretation of the exceptions employed by the majority requiring all materials or supplies to be "affixed" strips the general exemption of any rational meaning.
>
> Additionally, the legislature carefully stated in this same section that "tools and equipment used but not installed in the maintenance of facilities" are subject to tax. If the legislature had meant this same standard to apply to tools and equipment utilized in construction activities, it would have so stated in the same unambiguous language.

*Ragnar Benson,* 393 A.2d at 636 (Manderino, J., dissenting) (emphasis deleted). We find this language persuasive. Moreover, the Commonwealth agrees that, if a public utility had used or rented the equipment, it would not be subject to the tax. Thus, because of the inequities that have

arisen as a result of *Ragnar Benson* and the cases following it, we invite our Supreme Court to reexamine this issue.

6. Article VIII, Section 1 of the Pennsylvania Constitution provides:

> All taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws.

Pa. Const. art. 8, § 1.

7. The Fourteenth Amendment to the United States Constitution provides in relevant part:

> No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. Const. amend. XIV, § 1.

8. Of course, a governmental entity may waive an issue or be estopped by a prior decision if the issue relates to a private right or entitlement,

we reject Johnston's equal protection and uniformity arguments.

Accordingly, judgment is entered in favor of the Commonwealth.

### ORDER

AND NOW, May 28, 1998, judgment is ordered in favor of the Commonwealth. This order will become final unless exceptions are filed within 30 days of the entry of this order.

rather than a public one. *See Gribble v. Department of Corrections,* 711 A.2d 593 (Pa.Cmwlth. 1998).