W. N. Dambach, Inc., a Pennsylvania corporation, Petitioner *v.* Commonwealth of Pennsylvania, Respondent.

Argued November 14, 1984, before President Judge CRUMLISH, JR., and Judges WILLIAMS, JR., CRAIG, MAC-PHAIL, BARRY, COLINS and PALLADINO.

*Donald J. Balsley, Jr., Wick, Rich, Fluke & Streiff,* for petitioner.

*Bryan E. Barbin,* Deputy Attorney General, with him, *LeRoy S. Zimmerman,* Attorney General, for respondent.

OPINION BY JUDGE MACPHAIL, February 22, 1985:

W. N. Dambach, Inc. (Petitioner) appeals from the July 2, 1982, order of the Board of Finance and Revenue (Board) which denied Petitioner's petition for review and sustained the decision of the Board of Appeals pursuant to Assessment No. A-87042 issued by the Commonwealth, Department of Revenue, for nonpayment of sales and use taxes.

In accordance with Pa. R.A.P. 1571(f) Petitioner and the Commonwealth have entered into and filed a stipulation of facts which we will accept and adopt as findings of fact for the purposes of this appeal. From those stipulations we find that the Petitioner is engaged in cutting, bending and welding steel bars, steel mesh and other structural steel according to customer specifications for use in the construction of concrete

roads, buildings and floors. The Commonwealth concedes that Petitioner is engaged in a manufacturing process. When Petitioner successfully bids a project, the customer's specifications are fed into Petitioner's computer which prepares a production schedule consisting of cutting bar lists, job estimates, tags, orders and invoices. Petitioner concedes that the computer is not used in the actual production of the finished manufactured product in the sense that the computer controls the operation of the production line.

The Commonwealth conducted an audit of Petitioner's business activities for the period from January 1, 1977 through February 29, 1980. As a result of the audit, Assessment No. A-87042 was issued assessing Petitioner for various amounts of unpaid sales and use taxes. This assessment has been appealed administratively, resulting finally in the Board order cited above.

The sole issue to be decided by this appeal is whether or not Petitioner's computer is excluded from the Pennsylvania use tax. The Commonwealth contends that Petitioner's computer system is subject to tax because it is property not directly used in manufacturing and processing and, therefore, is not excluded from tax by operation of Section 201(o)(4)(B)(i) of the Tax Reform Code of 1971 (Code), Act of March 4, 1971, P.L. 6, *as amended,* 72 P.S. §7201(o)(4)(B)(i). Petitioner would have this Court determine that its use of the computer system is directly used in the manufacturing or processing of personal property.

The Code places the burden of proof upon Petitioner in this appeal. Section 236 of the Code, 72 P.S. §7236. Pa. R.A.P. 1571(f) provides that in petitions for review which appeal from determinations of the Board, the parties shall file a stipulation as to such

facts as may be agreed upon and shall identify issues of fact, if any, which remain to be tried. Here, the parties have chosen to rely upon the stipulations. Neither party has identified issues of fact remaining to be tried. Not only the parties but this Court as well, are bound by these stipulations. *George v. Department of Transportation,* 70 Pa. Commonwealth Ct. 574, 453 A.2d 717 (1982). Facts effectively stipulated are controlling *and* conclusive. *Kostecky v. Mattern,* 69 Pa. Commonwealth Ct. 575, 452 A.2d 100 (1982). Appellant at oral argument has urged that if we find the stipulated facts insufficient to make a determination of the issue before us, we should then conduct an evidentiary hearing. In *Anastasi Brothers Corporation v. Board of Finance and Revenue,* 455 Pa. 127, 315 A.2d 267 (1974), a somewhat similar issue was the subject of review by our Supreme Court of the refusal by this Court to permit the introduction of additional facts, even though the appellant there had specifically reserved the right to do so. Our refusal to receive additional evidence was affirmed. Here, of course, no such reservation appears in the stipulation; therefore, Petitioner has waived that option and this Court is bound and limited by the stipulations filed by the parties.

Section 201(c) of the Code, 72 P.S. §7201(c) defines ''manufacture'' in part as follows:

> The performance of manufacturing, fabricating, compounding, processing or other operations, engaged in as a business, which place any personal property in a form, composition or character different from that in which it is acquired whether for sale or use by the manufacturer, and shall include, but not limited to—
> (1) Every operation commencing with the first production stage and ending with the com-

pletion of personal property having the physical qualifies (sic) (including packaging, if any, passing to the ultimate consumer) which it has when transferred by the manufacturer to another[.]

It is further provided in Section 201(o)(4)(B)(i) of the Code that the term "use" shall *not* include

(B) the use or consumption of tangible personal property, including but not limited to machinery and equipment and parts therefor, and supplies or the obtaining of the services described in subclauses (2), (3) and (4) of this clause directly in any of the operations of—

(i) The manufacture of personal property[.]

Pursuant to authority found in Section 270 of the Code, 72 P.S. §7270, the Department of Revenue adopted regulations to aid in the enforcement and administration of the provisions of the Code. Among the regulations in effect during the relevant time period were the following:

In determining whether property is directly used, consideration shall be given to the following factors:

(i) . . .;

(ii) . . .;

(iii) The active causal relationship between the use of the property in question and the production of a product. The fact that particular property may be considered essential to the conduct of the business of manufacturing or processing because its use is required either by law or practical necessity does not of itself, mean that the property is used directly in the manufacturing or processing operations.

61 Pa. Code §32.32(a)(1).

The regulations further provided that:

Property in the following categories is not directly used in manufacturing or processing operations and the purchase or use of such property shall be subject to tax.

(i) . . . .

(ii) . . . .

(iii) *Managerial sales or other nonoperational activities.* Property used in managerial, sales, or other nonoperational activities is not directly used in manufacturing or processing and shall be therefore subject to tax. This category includes but is not limited to property used in any of the following activities.

(A) *Management and administration.* Office furniture, supplies and equipment . . . and all other property used in manufacturing or processing record keeping and other administrative and managerial work, whether on or off the production line, shall be subject to tax. Such property includes, but is not limited to supplies used to record the quality and quantity of work in production of goods in storage, the flow of work, the results of inspection, or to instruct workers in routing work or other production activities. (Emphasis in original.)

61 Pa. Code §32.32(a)(3).

Petitioner contends that its computer operations really do not fall within the "direct use" provisions of Section 32.32 of the regulations, nor does it fall within the "not directly used" provisions of the same regulation. Petitioner principally relies upon the broad language of *Commonwealth v. Olan Mills, Inc.*, 456 Pa. 78, 317 A.2d 592 (1974) and *Commonwealth v. Sitkin's Junk Co., Inc.*, 412 Pa. 132, 194 A.2d 199 (1963), for an interpretation of the word "manufac-

ture'' which demonstrates that case law compels the conclusion that Petitioner's computer operation at issue here is excluded from the use tax. Although neither case dealt with the definitions set forth in the Code or the regulations pertinent here, both cases emphasize that "manufacture" for tax purposes embodies two criteria—the *type* of activity and the *result* of the activity. Perhaps more to Petitioner's advantage is the adoption by both cases of the dictionary definition of "operation" as " 'the action of making or producing something.' " *Olan Mills, Inc.,* 456 Pa. at 80, 317 A.2d at 594 (quoting The Oxford English Dictionary, Vol. III, p. 145).

We believe the issue now before us is not controlled by either of those cases. What we are called upon to determine here from the *stipulations of fact* is whether this specific computer operation is a part of the first *production* stage or plays any part in transforming personal property to a form, composition or character different from that in which it was first acquired. We must conclude that it does not. The preparation of a production *schedule* in our view, cannot be considered as an integral part of the production process nor do we believe that there is an active causal relationship shown by the stipulations between the computer and the production of the finished product;[1] rather, we view the computer use as mere preparation *for* the actual production process. We hold that Petitioner has failed to meet its burden of proving that the use of the computer system is for activities directly part of the manufacturing or pro-

---

[1] The relevant time frame in considering whether machinery, equipment and supplies are directly used in manufacturing or processing operations is "from the first production operation to the time the product is packaged for the ultimate consumer. . . ." 61 Pa. Code §32.32(a)(2).

cessing operations rather than for managerial, sales or other non-operational activities.[2]

We will, therefore, enter judgment for the Commonwealth according to the stipulation of the parties.[3]

ORDER

The order of the Board of Finance and Revenue dated May 28, 1982, is hereby vacated.

It is further ordered that unless exceptions are filed within thirty (30) days of this Order, the Prothonotary shall enter judgment in favor of the Commonwealth and against W. N. Dambach, Inc., in the amount of $332.28 as sales tax and $3,525.77 as use tax properly assessed plus appropriate interest.

This decision was reached prior to the resignation of Judge WILLIAMS, JR.

---

[2] We distinguish our present holding from our recent decision in *General Asphalt Paving Company of Philadelphia v. Commonwealth*, 86 Pa. Commonwealth Ct. 106, 483 A.2d 1068 (1984). In *General Asphalt* the parties failed to stipulate with enough specificity to enable us to perform our judicial function. In the instant case Petitioner has simply failed to meet its burden of proof.

[3] The parties have stipulated that if this Court finds that the computer system was not property directly used in manufacturing or processing, judgment shall be entered for the Commonwealth consisting of: sales tax, $332.28; use tax, $3,525.77 plus appropriate interest.

---

DISSENTING OPINION BY PRESIDENT JUDGE CRUMLISH, JR.:

I respectfully dissent. The majority adopts a stagnant view of the statute and regulations in concluding that Dambach's computer is not exempt from the use tax as property directly used in the manufacturing of personal property. A function should not be forever deemed as ''mere preparation'' simply because human

mindpower has traditionally performed it. We must instead employ a flexible concept of direct use, since the legislature surely did not intend for the scope of tax-exempt property to be set in the stone of 1971 technology. The business-promoting purposes of the use tax exemption will not be meaningfully furthered in the years ahead unless we recognize the ongoing manufacturing revolution brought about by the advent of the micro-chip age. When a computer predominantly generates data that is *directly* used to enhance the efficiency of the manufacturing process, it should be exempt from use tax. I would therefore reverse the order of the Board of Finance and Revenue.